IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RANDY BEA ANDERSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-0016 |
| ) | |
| RANDY LEE, Warden ) | Chief Judge Sharp |
| ) | |
| Respondent. ) | |

### MEMORNADUM OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Randy Bea Anderson challenges the May 6, 2013, judgment of the Maury County Circuit Court following his Best Interest Plea of Guilty. Respondent filed an answer to the petition (ECF No. 15), along with a copy of the underlying state-court record (ECF No. 14).

The matter is ripe for review and this Court has jurisdiction. 28 U.S.C. § 2241(d). Because the issues presented can be resolved with reference to the state-court record, the Court finds that an evidentiary hearing is not necessary. *See Schriro v. Landrigan*, 550 U.S. 464, 474 (2007) (holding that if the record refutes a petitioner's factual allegations or otherwise precludes habeas relief, the district court is not required to hold an evidentiary hearing (citing *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).) Upon review and applying the AEDPA standards, the petition will be denied and this matter dismissed.

I. **PROCEDURAL BACKGROUND**

On or about September 4, 2012, Petitioner was indicted by the Maury County Grand Jury on one count each of aggravated burglary, theft over $1,000, and theft up to $500. (Technical Record ("Rec."), ECF No. 14-1 at 1-3.) On May 6, 2013, in accordance with a plea agreement,

Petitioner entered a Best Interest Plea of Guilty to one count of Class C Aggravated Burglary, one count of Class D Felony theft and one count of Class A Misdemeanor Theft. (*Id.* at 4-6.) Petitioner was sentenced as a Range II offender to a total effective prison term of 10 years with a release eligibility of thirty-five percent. (*Id.*)

On August 7, 2013, Petitioner filed a *pro se* petition for state post-conviction relief. (*Id.* at 7-15.) After reviewing the *pro se* petition, on January 1, 2014, the trial court appointed counsel (*Id.* at 28-29), who filed an amended petition on January 31, 2014 (*Id.* at 30-34). In the amended petition, Petitioner asserted that his guilty plea was involuntary and requested a new trial. (*Id.* at 30-34.) On March 31, 2014, the State responded to the amended petition denying that Petitioner's plea was involuntary, and to the extent Petitioner was suggesting his counsel was ineffective, the State denied that claim as well. (*Id.* at 35.) On November 24, 2014, the trial court held a hearing at which petitioner and his trial counsel, Mr. Bates, testified. (Trial Transcript ("Tr."), ECF No. 14-2.)

On December 9, 2014, the trial court entered an order denying the petition. (Rec., ECF No. 14-1 at 35-42.) Petitioner, through counsel filed an appeal, specifying, what had heretofore been suggested, that Petitioner was raising two grounds for ineffective assistance of counsel: (1) that "trial counsel failed to address [Petitioner's] mental history and lack of [,] or change of [,] medication prior to entering [a] plea of guilty; and (2) that [t]rial counsel failed to effectively communicate the terms of the plea agreement." (ECF No. 14-3 at 4.) The trial court's decision denying Petitioner relief was affirmed on appeal. *Anderson v. State*, No. M2015–00112–CCA–R3–PC, 2016 WL 552884 (Tenn. Ct. Crim. App. Feb. 12, 2016). Petitioner did not seek permission to appeal to the Tennessee Supreme Court.

## II. STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the evidence presented at the post-conviction hearing as follows:

> At the November 24, 2014 post-conviction hearing, the Petitioner testified that he had previously been diagnosed with two psychological disorders: schizoaffective disorder and bipolar disorder. He claimed that since his arrest and incarceration on August 3, 2012, his medication regimen was altered multiple times, and that he did not consistently receive his medication. The Petitioner claimed that this caused him to attempt suicide on at least two occasions while in the State's custody. Finally, the Petitioner testified that at approximately 4:30 a.m. on the morning of his plea submission hearing, he was asleep in an observation cell when an officer came in to confiscate a cup of water. The official report of incident, which was read into the record during the post-conviction proceeding, reflected that the cup contained the Petitioner's urine and that the Petitioner threw the cup at the officer. The Petitioner said that he "accidently hit [the officer] in the face," at which point the officer shot the Petitioner with a taser. The Petitioner informed trial counsel of the incident and showed him the entry wound from the taser dart. The Petitioner told trial counsel that he believed the guards were trying to kill him.
>
> The Petitioner claimed that trial counsel misled him as to the terms of his plea agreement. The Petitioner testified that until the morning of his plea submission, the only offer trial counsel had relayed to him from the State was "[e]ight years' probation." The Petitioner said that on the morning of his plea submission, trial counsel told him that if he did not accept the State's final offer of ten years with a release eligibility of thirty-five percent, the court would sentence him to twenty-six years with a release eligibility of sixty percent. On cross-examination, the Petitioner conceded that he did not remember the plea submission proceeding and could not recall whether he informed trial counsel about the modifications to his medication regimen. After being read portions of the transcript from his plea submission, the Petitioner agreed with the State that he told the court that his judgment was not impaired by his medications prior to the court accepting his guilty plea. He further admitted that he told the trial court that he was satisfied with his attorney and that he understood that his attorney had negotiated a plea deal wherein the Petitioner would be sentenced as a Range II offender when, in reality, he was subject to being sentenced as a Range III offender.
>
> Trial counsel testified that he was appointed to represent the Petitioner in 2012. He recalled that he met with the Petitioner several times both at the jail and in court prior to the Petitioner's appearances. Trial counsel stated that he was aware the Petitioner had previously attempted suicide and that during one meeting the Petitioner "said that something about having trouble getting his medications." However, trial counsel also testified that the Petitioner was always able to engage in meaningful and intelligent conversations with him and that he never saw any

indication that the Petitioner needed a mental evaluation. Trial counsel further recalled that on the date of the plea submission, the Petitioner was able to converse with him in a clear and cogent manner, and stated that he would not have let the Petitioner enter a plea if he was not fully convinced that the Petitioner understood the proceedings.

As to the plea agreement, trial counsel testified that the State initially offered to resolve all three charges for an effective sentence of eleven years with a release eligibility of forty-five percent as a Range III offender. After multiple negotiations, the State agreed to resolve all three charges for an effective sentence of ten years with a release eligibility of thirty-five percent as a Range II offender. Trial counsel testified that he never received an offer of eight years' probation and never relayed such an offer to the Petitioner. Trial counsel testified that he had multiple discussions with the Petitioner about the terms of the plea agreement before the Petitioner decided to accept it. Specifically, trial counsel recalled that on the day of the plea submission he asked another attorney to give the Petitioner a second opinion on the quality of the plea offer prior to the Petitioner deciding to accept the deal. Trial counsel was convinced that the Petitioner fully understood the terms of his plea agreement and was competent to enter a plea.

At the conclusion of the hearing, the post-conviction court took the matter under advisement, and on December 9, 2014, entered an order denying post-conviction relief on all grounds. In that order, the post-conviction court found that the Petitioner failed to prove that he had received ineffective assistance of counsel by clear and convincing evidence. The court determined that trial counsel met with the Petitioner on at least four occasions prior to the Petitioner's plea submission, and concluded that the Petitioner received "excellent representation by an experienced and very thorough and conscientious counsel, who protected and safeguarded his rights at every stage."

*Id.*, 2016 WL 552884, at *1-2.

### III. ISSUES PRESENTED FOR REVIEW

In his Amended Petition, Petitioner raises the following two grounds for relief:

Claim 1: He was not given a mental evaluation

Claim 2: His trial counsel coerced him into pleading guilty.

(ECF No. 7 at 5, 7)

### IV. STANDARD OF REVIEW

A. **Exhaustion and Procedural Default**

4

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court may not entertain a petition for the writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine designed to promote comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once a petitioner's federal claims have been raised in the highest state court available,[1] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). Moreover, if a habeas petitioner retains the right under state law to raise a claim by any available

---

[1] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th

5

procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (confirming the continued relevance of *Rose* under AEDPA).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted (because it was not presented to a state court for review), and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley*, 307 F.3d at 385–86 (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), cert. denied, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

### B. Fully Exhausted Claims

---

Cir. 2003) (quoting Tenn. S. Ct. R. 39).

Even when a petitioner's application for writ of habeas corpus under 28 U.S.C. § 2254 raises claims that have been properly exhausted in the state courts, this Court's review is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). In this Court, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v, Smith*, ___ U.S. ___, 135 S. Ct.1, 2 (2014); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the state courts in light of Supreme Court precedent at

the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

Thus, as the Supreme Court explained in *Bell*, a federal habeas court "may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). The federal habeas court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 784 (2011)).

Finally, the AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings

of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## V. DISCUSSION

In his first claim for relief, Petitioner states "Didn't give mental evaluation." (ECF No. 7 at 5.) Respondent argues that this claim must be denied because it is insufficiently pled or is procedurally defaulted because Petitioner did not raise it in the state courts. Although Respondent recognizes that Petitioner raised this issue in the state courts in the form of an ineffective assistance of counsel claim, he apparently believes that Petitioner has not done so here, and argues that because Petitioner did not raise this claim as a "freestanding claim" in the state courts, it is defaulted. (ECF No. 15 at 10.)

Respondent's argument is not well-taken. Petitioner filed a form Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (ECF No. 7.) The form Petition required Petitioner to note whether he raised in a post-conviction motion the same issue raised in "Ground One;" Petitioner marked "yes" and explained that the issues were raised in an "Amended post-conviction [petition]." (*Id.* at 5.) Likewise, Petitioner noted that he received a hearing on the issue raised in "Ground One," that he appealed from the denial of his post-conviction petition and that he raised the issue raised in "Ground One" on appeal. (*Id.* at 6.) While the Petition is sparse, at best, it does contain sufficient information from which the Court can determine that Petitioner intends to raise as Claim 1, the same claim his counsel raised in the state court; *to wit*, that trial counsel was ineffective for failing to address Petitioner's mental health history prior to allowing him to enter a guilty plea.

9

In his second claim for relief, Petitioner states "attorney coerced me into plea bargain." (ECF No. 7 at 7.) He notes that he raised this issue in a post-conviction petition. (*Id.*)[2] Respondent argues that Petitioner's second claim for relief is insufficiently pled or that AEDPA bars relief because the state court's rejection of this claim was reasonable. As with Claim 1, there is scant, but sufficient, information from which this Court can discern that Claim 2 here is the same claim as was raised by Petitioner in the state courts, that is, that trial counsel was ineffective for failing to effectively communicate with Petitioner regarding the plea agreement. Accordingly, the Court will consider the merits of Claims 1 and 2.[3]

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the

---

[2] Other than responding "yes" to the question about whether he raised the issue in Claim 2 in a post-conviction petition, Petitioner did not respond to any other questions regarding Claim 2.

[3] **Error! Main Document Only.**Even if one or both of Petitioner's claims were procedurally defaulted, the United States Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies

challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).

When considering an ineffective assistance claim, the court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Because the state courts decided petitioner's claims of ineffective assistance of counsel on their merits, their decision must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 131 S. Ct. at 784. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S. Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

---

available in the courts of the State.").

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Petitioner asserts that his trial counsel was ineffective for (1) for failing to address his mental health history prior to allowing him to enter a guilty plea; and (2) for failing to effectively communicate with him regarding the plea agreement.

Expressly applying the *Strickland* standard, the Tennessee Court of Criminal Appeals analyzed Petitioner's claims as follows:

> In the present case, the Petitioner complains that trial counsel mislead him as to the terms of his plea agreement and failed to investigate the effect of the changes to his medication regimen on the Petitioner's ability to enter a guilty plea. In denying the petition, the postconviction court stated, "[i]t is clear from the [plea submission] transcript that Petitioner freely, voluntarily, and knowingly chose to forego a jury trial and to enter a best interest guilty plea under the agreed terms. It
> is clear from the transcript that Petitioner knew the consequences of his plea." The post-conviction court also noted that the Petitioner affirmed that his medication did not interfere with his ability to understand the proceedings and that both the Court and trial counsel were careful to ensure that the Petitioner heard and understood his plea agreement and sentence. The court concluded that the Petitioner failed to "articulate any fair and just reason for withdrawal of his best interest plea of guilty."
>
> The record does not preponderate against the postconviction court's findings and supports its conclusion that trial counsel was not ineffective. Trial counsel testified that he recalled that the Petitioner had some difficulty receiving his prescribed medication; however, the record is devoid of any evidence as to what changes were made or how those changes may have impacted the

> Petitioner's competency to enter a guilty plea. Furthermore, the postconviction court read extensively from the Petitioner's guilty plea colloquy, wherein he assured the court that he was not under the influence of any medication that might affect his ability to enter a knowing and voluntary plea. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (noting that a defendant's testimony at a guilty plea hearing "constitute[s] a formidable barrier" in any subsequent collateral proceeding because "[s]olemn declarations in open court carry a strong presumption of verity"). Finally, there is no evidence, beyond the Petitioner's own testimony, supporting his contention that the State offered a plea deal of eight years to be served on probation. The Petitioner's trial counsel denied that any such offer was made or that he ever relayed such an offer to the Petitioner. The State affirmed that they never made such an offer.
>
> Accordingly, we agree with the post-conviction court's determination that trial counsel did not mislead the Petitioner as to the terms of his plea agreement and that the Petitioner fully understood the consequences of his decision to enter a guilty plea.

*Anderson*, 2016 WL 552884, *4.

As set forth above, the state court rejected Petitioner's ineffective assistance of counsel claims because he failed to demonstrate that his best interest guilty plea was not freely, voluntarily, and knowingly entered and because it was clear that Petitioner was sufficiently competent to understand the consequences of his plea. Petitioner has identified no error in the state court's legal reasoning or factual findings. Applying the doubly deferential standard applicable to the state-court's determinations on habeas review, Petitioner has demonstrated no basis for granting relief.

## VI. CONCLUSION

For the foregoing reasons, the petition will be denied and this matter dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a

13

COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller- El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

The Court finds that the petitioner has not made a substantial showing of the denial of a constitutional right with respect to his claims and that they do not merit further review. The court will deny a COA.

An appropriate order is filed herewith.

_____
Kevin H. Sharp
Chief Judge
United States District Court